Good afternoon, your honors, and may it please the court. Leah Spiro for Daryl Reynolds. I'll watch the clock and try and reserve four minutes for rebuttal. The condition that bans Mr. Reynolds from associating with any past felons fails to meet the statutory reasonableness requirements both facially and as applied to him. It sweeps in more than 20 million people regardless of what their offense was or how long ago it was committed. It sweeps in one-time offenders and not just career offenders. It sweeps in people with offenses that bear no relation to Mr. Reynolds' own drug and gun crimes, including people who have given false testimony, committed wire fraud, shoplifting, unlawful reentry. The felon ban has been... What do we do with the fact that it's a standard condition? That is, the commission, the sentencing commission said, hey, you know, this is, this is, we think it's important, you know, they put it in the, in the guidelines. It's one of the standard conditions. A few responses, your honor. What do we do with that? First, there are no standard conditions under the statutory scheme. Congress created mandatory conditions and everything else is discretionary and under the statute, the district court has to consider... Right, I saw that. Right. But the commission has some, you know, I call it a policy statement or whatever. They, in their infinite wisdom, said this is a permissible, you know, it should be a standard condition of revised release. What do we, I just can't figure out what to do with that. The sentencing commission has never justified this condition and so the government has pointed to the probation office's report on this condition. And what it does is it conflates current criminals who are banned by the companion condition that says someone may not associate with anyone currently engaged in criminal activity. It conflates those individuals with people with past felony convictions and it treats the two conditions, the current criminal condition and the past felon condition as both addressing the same concern that the defendant will be hanging out with people who will influence them to recidivate. We will admit that's true of the current criminal ban. Mr. Reynolds has not opposed that ban. But that is not true of the past felon ban and it's contrary to what this court has already said in NAPALU and in United States versus TM, both of which we've cited. And I think there are two important points from NAPALU that go to the timing of a past felony and the type of a past felony. Those are two nexus problems. So the first point in NAPALU is that a past crime has no indication of current criminality. The court said that in NAPALU in terms of the ban on associating with misdemeanors and then it said that in United States. Just one second though, let me just ask you about misdemeanors. Do you think misdemeanors are different than felonies? They are in several respects, but not in respects to determining whether someone poses a current risk of criminality. So misdemeanors are different in terms of they are less severe crimes. And so sentences are longer for felonies. Felonies can usually be counted at future sentencing hearings. Felonies carry punishment that is tied to the fact that the offense has been committed. So sometimes there's disenfranchisement rights or other rescinding of rights based on the past conduct. But felonies are no different in terms of the fact that once they've become stale, they're no longer determinative of current risk. And that's what the court said in United States versus TM and the cases that have followed TM. We cited one, but there are others as well. So let me ask you this. Suppose that the district court said, yeah, I think you're right, but you know, he's got a terrible record. And I'm going to narrow this down to I'm going to, we're going to say he can't associate with anybody who's been convicted of a felony within the past five years. Would that have, would that satisfy your concerns? That is closer. That's better tailoring, but it's our position that it still needs more tailoring, including the type of offense. The government has made no argument that someone who committed wire fraud or insider trading would be likely to influence Mr. Reynolds to recommit a drug or a gun crime or would lead him into a new path of white collar crime. What was Mr. Anderson's prior conviction? I believe it was a drug offense and he was arrested for a drug offense on the same night that Mr. Reynolds was. This wasn't a wire offense, right? Right. Mr. Anderson was not a white collar criminal. And so we think there needs to be offense type taken into consideration. There needs to be the timing because to your point, Judge Paez, the government's only statistics at most show a recidivism risk for the first five years after release of a past felon, which is typically the time that they're on supervised release anyway. Is there any other circuit that's considered this particular discretionary condition in the U.S. Sentencing Guidelines? No. This is the first time there has been a substantive statutory reasonableness challenge to this felon ban. This court considered a vagueness challenge in the King case, which it rejected. But that, of course, is very different grounds. But otherwise, there has not been this sort of challenge that's been considered and that's been addressed in any substantive way. So your argument is, as I understand it in reading the briefs and whatnot, is that you're not challenging a district court's sentencing authority to impose such a condition, but it just needs to be more specific, tailored to the particular defendant and his or her background, I guess. Is that right? That's correct. You're not making a full-on assault, are you? No. If a court is going to use a prior conviction as a proxy for the risk to the defendant, then the court has to consider what time frame of a felon is really relevant, and it has to consider the offense type. And we think that the court should also take into consideration the overlap with the current criminal ban, which does a lot of the work that the government says the past felon ban does. Can't those considerations be left open to the probation officer who has more contact with the defendant? No. The possibility of exceptions to the ban does not narrow it in any meaningful way. And I would point the court to the decision in Wolfchild, which explains when the possibility of exceptions by a probation officer can be taken into consideration. And it said it only comes into play if the ban is reasonable and justified to begin with. And there's two decisions by this court that are very helpful to set out those parameters. So there's Lacoste and then the Reardon decision, and they both involve internet bans. And one found that it was impermissible despite possible exceptions, and the other upheld it. So in Lacoste, the court rejected an internet ban because the defendant's offense was only tangentially related to internet use. And so the court said that a ban against internet use was not reasonably related. And so the possibility of exceptions made no difference and the ban had to be rejected as overbroad. But then in Reardon, the court upheld the ban because internet use was integral to the child pornography offense. And so the ban, the court found was reasonable to begin with, especially because there was the possibility of exceptions. So a felon ban against all felons, no matter what their crime, no matter how long ago it was committed, can't be rendered reasonable just because a probation officer could make a few exceptions to it. The facts in this case are that Mr. Reynolds was found, was a substantial amount of methamphetamine and Mr. Anderson had been convicted for drug use and drug trafficking. I just want to get the facts straight. Yes, absolutely. Two points on that. First of all, Mr. Anderson was the only felon in the entire record who was identified as a problem to Mr. Reynolds' rehabilitation. The court could certainly ban Mr. Reynolds from associating with Mr. Anderson, but that's not what this felon ban does. It is so much broader than that. And then second- Well, you know, the district court said, well, wait a minute. He's got a terrible record. He's got just a history of one crime after another, other than drugs as well. That speaks to the need for close supervision. We do not argue against that, but there are 30 other conditions that do that. And so there's the special search condition, financial monitoring, reporting to probation, living in an approved location with an approved roommate, accepting unannounced visits from probation. The government has yet to explain how this felon ban does anything additional that is needed on top of these 30 other conditions in order to monitor Mr. Reynolds. And certainly we don't allow for conditions- I mean, I can't remember off the top of my head, but I'd have to go back and look at the transcript. But did defense counsel say, you know, in the second sentencing when it got sent back down? Yes. Did the defense counsel say, we object to this and it's just too broad, but we could live with something more narrow? And here's what we think would work. My response to that is we did argue that there were ways to narrow it, and we identified that in our briefing. And the burden is on the government to justify it. So it's our position that the defendant doesn't need to offer narrower conditions. That's what this court has said in Wolfchild, in other, in Napolew. It's not on the defendant to shape an overbroad condition into one that would be appropriate. The burden always lies with the government to justify the reasonableness and the breadth of the condition. So I gather the probation officer could propose to the district court an appropriate or a more limited or tailored condition, is that right? Certainly. Well, I mean, you know, it does concern me that, you know, you don't want to put too much burden on the, I hate to say this, but you know, the district court judges have to have a checklist to make sure they're doing everything right, right? Well, most originates from the PSR and the probation office. And so I think the onus is really on the government and the probation office to craft different bans on what, if it wants to. If I remember correctly, the probation officer was in court at the time. And the judge pointed to her and said, well, he asked her a question about this, I think. Yes, the judge asked about exceptions for family members. And the probation officer wasn't even willing to consider that at this point until Mr. Reynolds is released from prison. Okay. So here's a question I have from the perspective of the district court judges. They're sentencing this person now. The person will, they're sentencing him to 10 years. And he has this horrible history of crime. What he wants to make sure is that when he gets out, nine or 10 years later, you know, depending on what happens in prison, that someone's making that judgment then based on the circumstances that exist at the time. Like say he's going into a re-entry program. Well, then the probation officer will say, of course you're going to be with other known felons. And so you may participate in this re-entry. And if at that time he's getting along with his sister and wants to live with his sister, the probation officer could make that or perhaps the sister's even no longer with us. We don't know. So to me, it's like a belt and suspender kind of thing that the district court puts on to make sure that someone who is aware of all the circumstances at the time of the release and when the supervised release, which is only for five years is, I mean, it's a long time, but I mean, it's not lifetime supervised release with these conditions. And furthermore, at the time, he could always make a motion to, for the district court to modify certain conditions if the circumstances were such that they should be modified at that period of time. It seems to me striking a discretionary consideration may not be the route to really getting to what we want to do, which is individualized sentencing based on the circumstances at the time.  Everything Your Honor is suggesting could be done starting with an appropriately narrow ban on certain group associations. So the district court needs to start in conjunction with the probation office with a much smaller universe of offenders, potentially those who are five years out of prison and those who have committed offenses that are at least reasonably related to the defendant's offense. That would suffice. And then I agree that the probation officer can make individual decisions about should certain people be excluded? Should the group that is part of the offender rehabilitation program be accepted? Those small decisions can be made, but we have to start with a much smaller ban. And just to keep a sense of this, probation officers are very overwhelmed. Their voicemail boxes are full. They are monitoring so many defendants that this is not some agile system where a defendant can simply get their probation officer on the phone and tweak the condition and get an exception. This process takes a while and is quite onerous for the probation department. So to start from an entire felon ban and expect the probation officer to make exceptions from there, I think is very unrealistic and unfair to the probation officer. Shouldn't the defenders object at the time and tell the district court, here's how it should be fashioned in this case? I mean, this is discretionary. It's not a mandatory felon ban. Right, but the government has to show it's reasonable and the district court has a statutory duty to make it reasonable. And so, yes, it's helpful if defense counsel helps fashion the ban, but that burden is simply not on defense counsel. Or at least object to the standard ban and give specific reasons. Right, which we did here. We actually briefed this almost exactly like we briefed in this court. The very same arguments were before the district court. Yes, there was thorough briefing, which there isn't usually, but the exact same arguments that have been made on appeal, including the ACLU's brief, including the statistics, including the specific cases cited to this court, all of that was before the district court when it made this decision. Did you suggest a concrete, never banned to the district court judge? I did not start chipping away. I was counsel below. And again, I made the point that this is not my burden. I suggested several ways that it should be narrowed. So the answer is, at the sentencing, the defense attorney didn't say, it's too broad a ban. Here's one that is better, right? That's correct. Okay, I see I've gone over time. If I may have a minute or two for rebuttal. Thank you. Good afternoon again, Your Honors. May it please the Court. Kelly Volkar on behalf of the United States. This Court should affirm, because the district court did not abuse its discretion in finding that Reynolds' individualized circumstances justified imposing the standard supervised release condition that he not knowingly associated with felons absent preapproval. So anybody that he knows who's been convicted of a felon, whatever it may be, if he did associate with them, if he knows, he's in violation of the terms and conditions of that provision of supervised release. That's correct, Your Honor, and it is. That strikes me. Why doesn't, let me ask you this, why doesn't the logic, and I'm talking about logic, not the fact that it's a misdemeanor, but why doesn't the logic of Napoli apply here? Your Honor, the main reason Napoli doesn't apply here, and it did reference the standard condition in that decision and specifically put to the side in foot number six.  Let me just talk about the logic, though, of it. Well, Your Honor, first of all, the decision in Napoli was really focused on the special conditions crafted by the district court in that case, including one that prohibited interaction with one particular person who was the person's life partner, who in the case also showed was providing support. They were going to counseling sessions together. They were, she was bringing her food. They were visiting one another. We don't have anything like that in this particular case. Rather, we have the facts where someone has a long, extensive criminal history that was full of violent offenses, full of large-scale drug trafficking and narcotics offenses, as the district court found, who was associating with felons when he committed the underlying offense in this particular case. And the district court didn't hang his hat on any one felon. And Anderson, as Judge Baio was talking with my colleague across the aisle, didn't hang his hat on any single felon in this particular case, but noted that throughout his history, he had essentially demonstrated an inability to steer himself in the right direction. The standard condition would have prohibited him from associating with Michael Milken. Yes. Yes, Your Honor. But I go back to it. The question is, and Judge Wardlaw got at this with the belt and suspenders approach, which is the sentencing commission, the probation office, and the district court all think that this broad condition is what will help give the probation officer the right tools to help to be reasonably related to the goals. Well, it's not a mandatory condition. That's correct, Your Honor. Not mandatory. The district court said, I'm not going to oppose this. But as I understand it, the northern district, though, has adopted this discretionary decision to its standard conditions of supervised release, which has sort of made it  That's correct, Your Honor, unless it is challenged. And of course, it was challenged here. But one point I want to make, responding to questions that were asked of my colleague across the aisle, there was no specific narrowing of this particular ban suggested below beyond striking the second sentence. There was just the portion of the condition that says people who are actively engaging in crime. That does put the onus on the probation officers to know who is actively engaging in crime rather than being able to extrapolate out. And what the judge said in this particular case is look at the facts again before the present offense. He was living with two felons and went out for his birthday. And yes, they were also committing a crime at that particular time because they had narcotics on them. But the district court, I believe you can fairly read from the record what he's inferring is if the probation officer knew that he was living with felons, they might have been able to intercede before the events that led to the criminal activity in this case. And I think that's, again, the belt and suspenders approach that Judge Wardlaw aptly put. But let me ask you, would the government object if the district court said, look, this is too broad, I think. Maybe we should just tailor it down and say you can't associate with anybody that you know has been convicted of a felony within the past five years. Would your government object to that? Well, Your Honor, it wasn't presented to the court. Well, no, I'm just asking you, would the government, you know, just give me your reaction. I'm trying to figure this out. Because I have, you know, I have a hard time squaring this with Napolu. Yeah, thank you, Your Honor. And I just want your, you know, I want your help. Your Honor, I think the government's position is really based on the individualized circumstances here. The district court didn't abuse its discretion for what was put before it. Yeah, but you know what the Northern District has done is sort of taken something that's the burden on the prosecutor and taken that away, taken the burden away. Isn't that right? Your Honor, respectfully, I disagree in the sense of I don't think it's the, it is the prosecutor's burden, but it's not the prosecution that has determined this particular condition is warranted at that standard condition level. And Your Honor accurately recited that it was the Sentencing Commission that proposed it in this list of standard, they are discretionary, but this list of standard conditions. The Probation Office, then nationwide, has adopted that that is, that those should be the standard conditions. And then the Northern District of California has adopted from that list this condition. So this is, this is a condition that has been proposed at multiple levels. And I did want to answer a question, Your Honor. Judge Wardlaw asked my colleague across the aisle of whether other circuits have ruled on this specific condition. They have. And my colleague is correct that oftentimes the challenge is presented as vagueness challenge or, but there are overbreadth challenges, too. And I want to specifically point the Court to the Tenth Circuit decision and the Seventh Circuit decision that are cited in the government's briefs. The Tenth Circuit decision is the United States v. Munez, 812F3809, at 820, or pin site 820. And the Seventh Circuit case is United States v. Speed, with the citation 811F3854, and that's at pin site 859 to 860. And if the Court is willing to bear with me for one more citation, the Seventh Circuit also specifically addressed the same argument my colleague is putting forward here in U.S. v. Douglas, citation 806F3979. There, the argument was that the defendant argued the condition limiting engagement or prohibiting associating with people who are currently engaging in crime sufficiently covered that the remaining condition about associating with all felons was too broad and it should be limited to that first sentence. That's, again, the United States v. Douglas, and the Seventh Circuit disagreed. And all of the rationale for each of these judges in the Tenth and Seventh Circuit is the same. The probation office needs the ability, the tools at its disposal in order to help a  Well, there's nothing. I mean, as I asked counsel whether she was arguing that the whole thing should just be struck down or whether it was more tailored in her response, well, it should be more tailored to the particular defendant so that you have individualized sentencing. That's correct, Your Honor. I don't understand what's wrong with that. I mean, so I don't understand. You know, the district court could have said, look, probation officer, I want you to go back and think about this and propose a more narrow condition of supervised release that is not so broad. Otherwise, what you've got here is unreasonable. So you wouldn't, and then the probation officer comes back with something, you know, five years, drug-related conviction. Would the government really be upset with that? Your Honor, if that had been proposed below, we may be having a very different discussion. It just simply wasn't proposed below. And that's not the government shirking its burden. We know that it's our burden to uphold this condition. We believe that we have. But below, the district court was looking at whether or not that first sentence, the persons who are currently engaging in criminal activity, whether that narrowly tailored aspect was sufficient. And the district court rejected that. The district court rejected the all-or-nothing proposition that the probation officer either has to be all-knowing and be able to assess who is currently engaging in criminal activity or to have the sort of belt-and-suspenders approach to also be able to assess known felons who Mr. Reynolds might want to associate with in order to sort of suss out the people like Mr. Anderson who may be negative influences on Mr. Reynolds during his rehabilitation, during those five years that he's on supervision. And the district court explicitly held that this condition in full promotes the rehabilitation of defendants. It protects the public interest from future crimes. And he, Reynolds, has chosen a life of crime from a very young age, and along the way, he has consorted with felons. So the district court rejected that anything narrower than this ban would help a defendant such as Mr. Reynolds. And again, while there may be a place in a forum for a further sort of referendum on whether this standard condition writ large makes sense, in this particular case, the district court did not abuse its discretion, given the individualized circumstances of Mr. Reynolds, given, as my colleague Crosial said, all of the briefing that's before this court was before the court below. And the court held that based on Mr. Reynolds' criminal history, based on the facts underlying this specific case, this was not the case to narrow that condition any further. And I just want to add to Judge Bea's point from earlier, one aspect that makes this condition particularly reasonable is, of course, the exception for probation officers, is the fact that... The judge here spent some time thinking about Mr. Reynolds' particular crimes, but he didn't spend any time thinking about what kind of a felon would influence Mr. Reynolds. He took a broad approach to saying any felon would influence, he shouldn't hang out. With felons. Is there any problem with that? Your Honor, to that I respond, again, to what was put before the district court. For example, at the district court level, Mr. Reynolds was referencing his sister and his brother, who both have prior felonies. And ER 14 to 16, the district court spent two transcript pages talking with the probation officer about possibly making a carve-out for those individuals, thinking that they might be able to provide a positive impact on him. And to answer your question more directly, Judge Bea, I think that if there had been put forth a proffer or, again, a request to limit or narrow the condition, again, according to Judge Paia's hypothetical, if the district court said, probation officer, go back to the drawing board, limit this based on the type of felony, limit this based on the number of years, we may be having a different conversation. But that simply wasn't the conversation that was happening below. The conversation that was happening before the district court was about specific people that were proffered that Mr. Reynolds might want to associate with. And again, what probation responded to the district court is very similar to what Judge Wardlaw was saying. It will be easier for us to determine at the time that he is released from prison to know what their status is, to know what their sobriety status is, to know where they are with their own mental health, where they are in their own lives. And I would put forward, Judge Bea, that the same reasoning applies to making carve-outs based on certain types of felons, felonies, excuse me. That would still, I mean, it would have to be, I guess, say this, how long would he, it was a 10-year sentence? Roughly, Your Honor, yes. Oh, no, it was exactly 10 years. So when he gets out in 10 years, then he would have to go back to the Federal Public Defender's Office and say, hey, this is a problem. Could you file a motion to fix this? Is that what you're saying? Is that what the suggestion is? Well, Your Honor, the first step would be the probation officer. And Mr. Reynolds would have, would work with his probation officer for exceptions. If Mr. Reynolds did not agree with the probation officer's answer, there is the ability to modify his conditions by going back to the district court. He'd have to file a motion, though, and the public defender most likely would have to do it. That's correct, Your Honor. And I would also point— Probably not a high priority for them, right? Your Honor, there are a lot of things that they have to juggle. I won't deny that. But I would also point, Your Honor, to that's not the only, again, in this belt and suspenders approach, that's not his only avenue, as Your Honor is very familiar with the Napolo case. Yes. And also the King case. Those both arose in the context of when the defendant was accused of violating the condition in a revocation proceeding. And at those point in time, the defendants chose to challenge the statute itself at that point in time. And this court gets to then determine whether it was reasonable, whether he was on sufficient notice, was the probation officer acting that way it should. And I put all of that forward to say it is a belt and suspenders approach. There is a lot of checks and balances that are there. And this is a condition that the sentencing commission, the probation office, and the district court all thought should apply in this case. And for that reason, the government urges this court to find the district court did not abuse its discretion, given Mr. Reynolds' individualized circumstances, and affirm. Let me try to understand one thing. Mr. Reynolds was given a 10-year sentence. He has some time before he has to worry about whether his probation conditions can be modified or not, right? That's correct, Your Honor. It is less time at this point. It is, I believe, scheduled to be released next October, October of 2026. And that's because this appeal went up, was held for Montoya, went back to the district court. There was resentencing, and we're here. So there has been some time that has passed. But Judge Beyer, your point is still correct. There is still about 18 months or more before he'll be released. Thank you. If there are no further questions, thank you, Your Honors, for your time. Thank you, counsel. Ms. Spiro. First, to address the cases from the other circuits, none of them raised the type of statutory reasonableness challenge raised here. Each of them that she mentioned addressed a First Amendment overbreath or a vagueness challenge, unlike the one here. And they simply had cursory and unpersuasive analysis. So none of them lend support here. The second is that, the second point is this court, in no other case, has kicked the can on an overbroad condition and made the defendant seek to have it altered once they were released. A condition is evaluated when it's imposed. Counsel, I think we're being asked to review the imposition of this condition on your client. And as I go back and review the sentencing transcript, he made several very individualized points about this client in particular. Say, you know, he applied, I mean, he applied the 3582 factors and 3583 factors and said this, this, it isn't overbroad as to this defendant because he's serving under conditions, similar standard conditions of supervised release right now. And he broke that very one by living with a couple felons and then going out with his friend. He says, and the crime at issue, they were, you know, playing around with guns and shooting into the sky. Someone could have been killed. And he says, as to this particular, he goes through a lot of factors that, he lives with two felons. They get together and act irresponsibly and commit more crimes. I don't think he was just, like, applying this as a routine thing. So isn't this something we should be, since he actually went through that analysis, isn't that something we should be reviewing for abuse of discretion? Yes, but this court has made clear that abuse of discretion in this context, and this is Wolfchild, really depends on whether the reasoning of the court supports that the reasonableness, the two reasonableness tests in the statute have been met. Right, but he said, he explicitly said, I don't care if this is standard or mandatory or what this is. In this case, this is the type of restriction that should be put on this defendant. Well, I think it runs headlong into Napolou's logic. I don't think that this felon ban can survive under Napolou, as applied to my client individually, because it will always be overbroad, and it's overbroad for him. Because Napolou said two things. First of all, that past criminality does not determine current criminality, and the court said that again in TM. And then also made the point that it has to be tied to offense type. And so that point is made at 1045 to 1046, that when this court imposes other group association bans, they're based on a type of conduct that would be likely to cause that specific defendant to recidivate. So that's true for street gangs, for neo-Nazi groups, for people who have been convicted of drug offenses, for Irish organizations. Can I just ask you, this is an as-applied challenge, is that correct? It's as-applied to my client, but also we have briefed that facially this is not appropriate for any defendant, because it will always be overbroad. You don't think there's circumstances where it can be constitutional, as applied to a particular criminal defendant? No, because it will always... A set of circumstances. No, it will always be missing a timing nexus and an offense nexus. There's no criminal for whom you could say any felon, no matter how old their offense, no matter how long it's been since they have committed an offense, no matter what their offense... No, I think if you're making that kind of challenge, you have to argue that there's no set of circumstances in which it would be constitutional. So let's take the worst criminal on the earth. I can think of several right now, but I won't mention their names. It still isn't tailored. There is always tailoring to be done with the felon ban, and I think the logic is inescapable. The narrow tailoring analysis is what is the as-applied challenge. And as-applied, so you're asking us to say as-applied to this particular client, it's not constitutional? It doesn't meet the reasonableness, the statutory reasonableness. I'll go back to it. I recall from reading your briefs. But it's that, not that this is a constitutional, there's no constitutional claim, it's just that under the statute, this particular condition of probation is unreasonable. That's right. Because it's not properly tailored. That's right. That's what I understood your argument. That's right. And this Court has used the term overbreadth, meaning it is broader than is reasonably necessary, and it's not reasonably related, according to the statute. So that's why I used the term overbreadth in this context. All right. Thank you. You're on. Thank you, counsel. U.S. v. Reynolds is submitted. And this session of the Court is adjourned for today.
judges: WARDLAW, PAEZ, BEA